Filed 11/3/21  In re A.O. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re A.O. et al., Persons Coming Under the Juvenile Court Law. | B311552 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.W., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP06739A-B) |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee.  Affirmed.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and O. Raquel Ramirez, Senior Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Mother A.W. appeals the juvenile court's dispositional order removing then seven-year-old Ameer O. and three-year-old A.O. from her custody due to mother's substance abuse and lack of adequate supervision. She does not challenge the juvenile court's jurisdictional findings. Mother contends no substantial evidence supports the finding that the children were in substantial danger, or that there were no reasonable means to protect them other than removal. We affirm.

## BACKGROUND

This family came to the attention of the Los Angeles County Department of Children and Family Services (Department) following a December 2020 referral that then two-year-old A.O. was found wandering the streets alone at night, wearing only a dirty shirt and diaper. Mother called 911 at 10:00 p.m. to report A.O. missing, more than an hour after the Sheriff's Department received the 911 call about the child.

Mother told deputies she and A.O. were sleeping together at approximately 8:20 p.m. She later woke up and discovered A.O. was missing. Mother believed A.O. unlocked the door and left through an open gate. Mother admitted this was not the first time A.O. had unlocked the door and gone outside. The family lived in a high crime neighborhood, with gang members next door, and multiple shootings on the street where A.O. was found. Mother was arrested for child endangerment.

At the time of the incident, father was at work. Father was employed as a forklift driver. Mother told the social worker that she had smoked marijuana that afternoon. She smoked a "blunt" while maternal great-grandmother was watching the children. Mother denied that smoking marijuana affected her ability to care for the children. Mother admitted to feeling depressed and

2

overwhelmed with her family's living situation. She denied any prior child welfare history.

Father believed mother was a good parent, and that this was a one-time mistake. Father signed a safety plan agreeing he would supervise the children at all times, with the assistance of maternal grandmother or maternal great-grandmother, who also lived in the family home, and ensure that doors and the gate were properly locked. Father admitted he smokes marijuana and said he was willing to drug test. He was on formal probation for grand theft and robbery convictions.

The family had a 2017 general neglect referral for Ameer O. in Riverside County, after mother miscarried at home when she was 25 weeks pregnant and reported to the hospital the next day with the deceased baby. Mother tested positive for marijuana and admitted to using every other day during her pregnancy. The referral was closed as unfounded, as toxicology results on the baby were pending, and no autopsy was performed.

There was also a 2014 referral from Riverside County as to then seven-month-old Ameer O., based on mother's and father's marijuana use in Ameer's presence. The referral was closed as mother and father were meeting his basic needs.

At the December 28, 2020 detention hearing, the juvenile court detained the children from mother, and allowed them to remain in father's care, with monitored visitation for mother.

According to the February 2021 jurisdiction/disposition report, father had installed a lock on the gate. He also stopped smoking marijuana when the Department became involved with the family.

In January 2021, father reported that mother was recently shot four times down the street from the family home. She was

complying with the court order that she not reside in the family home. Father was committed to caring for the children, and he wanted to move to a safer neighborhood. But father was unwilling to participate in a Child and Family Team meeting. The Department had been unable to schedule a time with father to check on the children or assess the home, and no one answered when the Department attempted to make unannounced home visits.

Mother told the social worker she was homeless, and that she was shot in the arm while walking to breakfast. When a Department social worker visited the family home, she saw a car with gunshot holes parked out front. The Department was concerned mother was frequenting the family home. When asked to drug test, mother said she "[could] not right now." She also refused to participate in a Child and Family Team meeting. Neither parent had submitted to drug testing.

A February 2021 last minute information noted that father was still not communicating with the Department, had not drug tested, and had not made the children available. Mother tested for the Department on February 10, 2021, and her test was positive for marijuana at a level of 725 ng/ml.

At the February 18, 2021 adjudication hearing, the court sustained allegations under Welfare and Institutions Code section 300, subdivisions (b) and (j), that mother failed to adequately supervise A.O. while she was under the influence of marijuana, that mother abuses marijuana, that father failed to protect the children from mother's substance abuse, and that this conduct also put A.O.'s sibling, Ameer O. at risk of harm. The court ordered mother and father to cooperate with the Department's assessment of the home, and also gave the

4

Department discretion to allow mother to return to the family home.

Mother and father continued to evade the Department, and they did not respond to the Department's attempts to make contact with them. The Department was only once able to contact mother by phone, despite repeated attempts. Therefore, the Department was unable to assess the ability of mother or father to care for the children. Mother tested positive for marijuana on February 24, 2021, at a level of 286 ng/ml, and tested positive again on March 8, 2021, at a level of 562 ng/ml.

At the March 23, 2021 disposition hearing, mother's counsel argued that she was drug testing and had enrolled in parenting classes, so she should be allowed to return home with family maintenance services. Concerned that the parents were still not cooperating with the Department, the court removed the children from mother, and ordered them to remain in father's care. Mother was ordered to participate in a drug program, testing, counseling, and parenting classes. Mother timely appealed.

## DISCUSSION

Mother does not challenge the juvenile court's jurisdictional findings, and admits "the evidence available to the court supported a finding that mother had a problem with marijuana that interfered with her ability to safely supervise Ameer and A.O." Yet mother contends there was insufficient evidence the children were at substantial risk of harm if returned to her care, arguing that the Department addressed any safety concerns by implementing a safety plan that required father to supervise the children. We are not persuaded.

5

Removal is proper if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (Welf. & Inst. Code, § 361, subd. (c)(1).) We review the dispositional order for substantial evidence, keeping in mind the trial court had to find clear and convincing evidence supporting removal. (*In re V.L.* (2020) 54 Cal.App.5th 147, 155.) We must decide " 'whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' " (*Ibid.*)

We find such evidence here. The sustained jurisdictional findings are prima facie evidence the children were unsafe with mother. (See *In re T.V.* (2013) 217 Cal.App.4th 126, 135 ["The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home."].) Mother's failure to supervise A.O. could have had a tragic outcome, given the pervasive violence in the neighborhood. Mother's drug tests showed varying levels of marijuana, indicating that she was still using. Despite the Department's repeated attempts to assist the family, mother and father refused to participate in a Child and Family Team meeting and were largely unresponsive to the Department's repeated attempts to assess the safety of the children. Under these circumstances, the evidence amply supports the conclusion that the children were in substantial danger, and that there were no reasonable means to protect them other than removal.

## DISPOSITION

The dispositional orders are affirmed.


GRIMES, Acting P. J.


WE CONCUR:


STRATTON, J.


HARUTUNIAN, J.*

---

\* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.